1

2

3

4

5

6                      **UNITED STATES DISTRICT COURT**

7                            **DISTRICT OF NEVADA**

8

9    EDWARD LEE SMITH,

10           Petitioner,                          Case No. 2:06-CV-00291-RLH-(RJJ)

11   vs.                                          **ORDER**

12   GLEN WHORTON, et al.,

13           Respondents.

14

15           Before the Court are the Amended Petition for a Writ of Habeas Corpus Pursuant to

16   28 U.S.C. § 2254 (#24), Respondents' Answer (#32), Petitioner's Reply (#36), Respondents'

17   Supplemental Answer (#37), and Petitioner's Supplemental Reply (#40).  The Court finds that

18   Petitioner is not entitled to relief and denies the Amended Petition (#24).

19           The basic facts of the case are not in dispute.  In the early morning of May 28, 2001,

20   Martinique Tillman was sitting or sleeping in Petitioner's disabled car, which was parked in an alley

21   at the apartment complex of Petitioner's girlfriend.  Petitioner, who was outside the car, stabbed

22   Tillman eight times.  One of the wounds penetrated Tillman's heart and was fatal.  Ex. 52, pp. 51-53

23   (#33-11, pp. 8-10) (testimony of medical examiner).[1]

24           After a jury trial, Petitioner was convicted of second degree murder with the use of a

25   deadly weapon.  Ex. 32 (#20-9, p. 16).  Petitioner appealed, and the Nevada Supreme Court

26   affirmed.  Ex. 37 (#20-12, p. 16).  Petitioner then filed a state-court post-conviction petition for a

27   _____

28           [1]Page numbers in parentheses refer to the Court's computer images of the documents.

1  writ of habeas corpus, which he later amended.  Ex. 39, 41 (#21-2, p. 2, #21-6, p. 2).  The district

2  court denied the petition.  Ex. 45 (#21-12, p. 2).  Petitioner appealed, and the Nevada Supreme

3  Court affirmed.  Ex. 48 (#21-13, p. 2).

4          Petitioner then commenced this action.  The Court dismissed Grounds 1, 3, and 4,

5  and paragraphs 3-8 of Ground 6 as unexhausted or procedurally defaulted.  Order (#30).

6          "A federal court may grant a state habeas petitioner relief for a claim that was

7  adjudicated on the merits in state court only if that adjudication 'resulted in a decision that was

8  contrary to, or involved an unreasonable application of, clearly established Federal law, as

9  determined by the Supreme Court of the United States,'" <u>Mitchell v. Esparza</u>, 540 U.S. 12, 15

10  (2003) (quoting  28 U.S.C. § 2254(d)(1)), or if the state-court adjudication "resulted in a decision

11  that was based on an unreasonable determination of the facts in light of the evidence presented in

12  the State court proceeding," 28 U.S.C. § 2254(d)(2).

> A state court's decision is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." A state court's decision is not "contrary to . . . clearly established Federal law" simply because the court did not cite our opinions.  We have held that a state court need not even be aware of our precedents, "so long as neither the reasoning nor the result of the state-court decision contradicts them."

<u>Id.</u> at 15-16.  "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must be objectively unreasonable."  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-76 (2003) (internal quotations omitted).

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule.  If a legal rule is specific, the range may be narrow.  Applications of the rule may be plainly correct or incorrect.  Other rules are more general, and their meaning must emerge in application over the course of time.  Applying a general standard to a specific case can demand a substantial element of judgment.  As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

<u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004).

1    The petitioner bears the burden of proving by a preponderance of the evidence that he

2 is entitled to habeas relief.  Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004), cert. dismissed,

3 545 U.S. 1165 (2005).

4    In Ground 2, Petitioner claims that his right to a speedy trial was violated.  One

5 hundred twenty-five days passed between his arraignment in district court and his trial.  Much of his

6 claim rests upon Nevada's law that a person generally must be brought to trial with sixty days of

7 arraignment.  See Nev. Rev. Stat. § 178.556.  However, the concern of this Court rests upon the

8 federal constitutional issues.  On those issues, the Nevada Supreme Court wrote:

> There are four factors the court should balance when making a determination of
> whether a defendant's Sixth Amendment right to a speedy trial has been violated:  (1)
> the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of
> his right; and (4) the prejudice to the defendant from the delay.  No single factor is
> necessary or sufficient, alone, although the final factor, prejudice, may weigh more
> heavily than the other factors.

13 Ex. 37, pp. 1-2 (#20-12, pp. 16-17) (citing, among other cases, Barker v. Wingo, 407 U.S. 514

14 (1972)).  Petitioner focuses on the fourth factor.  Reply, p. 3 (#36).  On that factor, the Nevada

15 Supreme Court held:

> The fourth factor, prejudice to the accused, is a "paramount concern in speedy trial
> cases."  However, Smith has not provided any evidence showing how he was
> prejudiced by the delay.  He merely quotes McGee v. State, where we stated, "This
> constitutional right recognizes that the pendency of a criminal charge may subject an
> accused to public scorn, deprive him of employment and curtail his speech and
> associations.  It affords protection against these consequences as well as against
> unreasonable detention before trial."  Smith then makes the bare allegation that he
> "suffered all the prejudice created by delay as envisioned in McGee.
>
> As we have previously stated, bare allegations of prejudice will not suffice.  In this
> case, Smith was convicted of second-degree murder.  There is no indication that he
> suffered any additional public scorn, deprivation of employment, or curtailment of
> his speech and associations due to a delay in the trial beyond that associated with his
> conviction.
>
> We conclude that the good cause for the delay, along with the absence of prejudice to
> Smith and the serious nature of the crime charged, far outweigh the short length of
> the delay in this case.

26 Ex. 37, pp. 4-5 (#20-12, pp. 19-20) (citing, among other cases, McGee v. State, 470 P.2d 132 (Nev.

27 1970)).  The Nevada Supreme Court correctly identified the governing federal rule.  It analyzed all

28 the relevant factors, and its application was reasonable.  28 U.S.C. § 2254(d)(1).

-3-

1    Ground 5 contains twelve claims of ineffective assistance of counsel.  "[T]he right to

2    counsel is the right to the effective assistance of counsel."  McMann v. Richardson, 397 U.S. 759,

3    771 & n.14 (1970).  A petitioner claiming ineffective assistance of counsel must demonstrate (1)

4    that the defense attorney's representation "fell below an objective standard of reasonableness,"

5    Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that the attorney's deficient

6    performance prejudiced the defendant such that "there is a reasonable probability that, but for

7    counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694.

8    "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in

9    the same order or even to address both components of the inquiry if the defendant makes an

10   insufficient showing on one."  Id. at 697.

11   Strickland expressly declines to articulate specific guidelines for attorney

12   performance beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of

13   interest, the duty to advocate the defendant's cause, and the duty to communicate with the client

14   over the course of the prosecution.  466 U.S. at 688.  The Court avoided defining defense counsel's

15   duties so exhaustively as to give rise to a "checklist for judicial evaluation of attorney

16   performance. . . .  Any such set of rules would interfere with the constitutionally protected

17   independence of counsel and restrict the wide latitude counsel must have in making tactical

18   decisions."  Id. at 688-89.

19   Review of an attorney's performance must be "highly deferential," and must adopt

20   counsel's perspective at the time of the challenged conduct to avoid the "distorting effects of

21   hindsight."  Strickland, 466 U.S. at 689.  A reviewing court must "indulge a strong presumption that

22   counsel's conduct falls within the wide range of reasonable professional assistance; that is, the

23   defendant must overcome the presumption that, under the circumstances, the challenged action

24   'might be considered sound trial strategy.'"  Id. (citation omitted).

25   The Sixth Amendment does not guarantee effective counsel per se, but rather a fair

26   proceeding with a reliable outcome.  See Strickland, 466 U.S. at 691-92.  See also Jennings v.

27   Woodford, 290 F.3d 1006, 1012 (9th Cir. 2002).  Consequently, a demonstration that counsel fell

28   below an objective standard of reasonableness alone is insufficient to warrant a finding of

-4-

1  ineffective assistance.  The petitioner must also show that the attorney's sub-par performance

2  prejudiced the defense.  <u>Strickland</u>, 466 U.S. at 691-92.  There must be a reasonable probability that,

3  but for the attorney's challenged conduct, the result of the proceeding in question would have been

4  different.  <u>Id.</u> at 94.  "A reasonable probability is a probability sufficient to undermine confidence in

5  the outcome."  <u>Id.</u>

6        If a state court applies the principles of <u>Strickland</u> to a claim of ineffective assistance

7  of counsel in a proceeding before that court, the petitioner must show that the state court applied

8  <u>Strickland</u> in an objectively unreasonable manner to gain federal habeas corpus relief.  <u>Woodford v.</u>

9  <u>Visciotti</u>, 537 U.S. 19, 25 (2002) (<u>per curiam</u>).

10        First, Petitioner claims that trial counsel was ineffective for failing to obtain a copy

11  of the videotape from the apartment complex's surveillance cameras.  The Nevada Supreme Court

12  held:

13        The record reveals that Detective Falvey testified that she "spent hours" reviewing
the surveillance videotapes and they did not contain any video relating to the crime.

14        Falvey further stated that Smith's car never appeared on the surveillance tapes.
Smith failed to demonstrate that he was prejudiced by his counsel's allegedly

15        deficient performance, and he therefore did not establish that his counsel was
ineffective for failing to review the videotapes.

16

17  Ex. 48, p. 4 (#21-13, p. 5).  Detective Falvey's testimony bears out the Nevada Supreme Court.  <u>See</u>

18  Ex. 53, pp. 41-43 (#33-15, pp. 13-15).  That was a reasonable application of <u>Strickland</u>.

19        Second, Petitioner claims that counsel should have questioned Dr. Green, the

20  coroner, or Dr. Grey, Petitioner's retained expert, about a report that stated that marijuana

21  metabolites were found in Tillman's blood.  The Nevada Supreme Court held:

22        However, Smith did not provide adequate support for his assertion that Tillman had
drugs in his system when he died.  Further, Smith did not articulate how evidence

23        that Tillman was using drugs would have altered the outcome of his trial.
Accordingly, we affirm the district court's denial of this claim.

24

25  Ex. 48, p. 8 (#21-13, p. 9) (citation omitted).  In this action, Petitioner submitted the toxicology

26  report of Martinique Tillman, which states that a marijuana metabolite was detected in Tillman's

27  blood.  Ex. D (#2-1, p. 32).  This report was not entered into evidence at trial.  It is not clear whether

28  Petitioner presented the report in his state habeas corpus proceedings, because the report is not

1    attached to the original state petition or the amended state petition.  See Ex. 39, 41 (#21-2, p. 2, #21-

2    6, p. 2).  If Petitioner made no attempt to present this report to the state courts, then this Court

3    cannot consider it.  28 U.S.C. § 2254(e)(2); Cooper-Smith v. Palmateer, 397 F.3d 1236, 1241 (9th

4    Cir. 2005).  Moreover, the Nevada Supreme Court reasonably applied Strickland when it determined

5    that Petitioner had not shown how the evidence of drugs in Tillman's blood could have affected the

6    outcome of the trial.  28 U.S.C. § 2254(d)(1).

7         Third, Petitioner claims that trial counsel was ineffective for not introducing records

8    of Tillman's arrests and bans from the apartment complex for trespassing.  Petitioner argues that

9    this was relevant to his theory of self-defense.  In part of Petitioner's fourth claim of ineffective

10   assistance of counsel, he argues that trial counsel should have called the manager of the apartment

11   complex to testify about Tillman's trespasses.  The Nevada Supreme Court held:

12            Assuming this evidence would have been admissible as opinion or reputation
              testimony, or as specific instances of conduct to support Smith's claim of self-
13            defense, we conclude that Smith did not establish a reasonable probability that the
              results of his trial would have been different.  Therefore, he did not demonstrate that
14            his counsel's performance was deficient, and the district court did not err in denying
              this claim.

15

16   Ex. 48, pp. 7-8 (#21-13, pp. 8-9) (citations omitted).  Petitioner's theory was that he had acted in

17   self-defense.  This evidence might have been admissible, if Petitioner knew about these specific

18   instances of Tillman's conduct.  However, Petitioner would have needed to testify to prove that

19   knowledge.  Petitioner did not testify, and thus the evidence was inadmissible.  The Nevada

20   Supreme Court reasonably applied Strickland.  28 U.S.C. § 2254(d)(1).

21        The remaining part of Petitioner's fourth claim of ineffective assistance of counsel is

22   that trial counsel should have called Petitioner's girlfriend, Keisha Morris, as a witness.  Petitioner

23   did not find the weapon that Petitioner used to kill Tillman.  The Nevada Supreme Court held:

24            The State implied in its closing argument that Morris hid the murder weapon, and
              Smith argued that Morris would have testified that she did not dispose of the knife.
25            Smith failed to demonstrate how Morris' testimony would have altered the outcome
              of the trial, and the district court therefore did not err in denying the claim.

26

27

28

1    Ex. 48, p. 8 (#21-13, p. 9).  There is no doubt that Petitioner killed Tillman.  Another person in the

2    car, Robert Waddell, saw the immediate aftermath of the attack upon Tillman.[2]  Ex. 51, pp. 49-50

3    (#33-7, pp. 23-24).  Tillman fled from the car after being stabbed, and he told Calvin Weston that

4    Petitioner had stabbed him.  Ex. 51, p. 95 (#33-9, p. 11).  Petitioner told the police in a voluntary

5    statement that he stabbed Tillman, but he claimed self-defense.  Ex. B, pp. 9-10 (#2-1, p. 21-22).

6    The location of the weapon was not essential to the proof of this case.  The Nevada Supreme Court

7    reasonably applied Strickland.  28 U.S.C. § 2254(d)(1).

8            Fifth, Petitioner claims that counsel should have moved for dismissal because the

9    state failed to produce exculpatory evidence.  The Nevada Supreme Court held:

10           Specifically, Smith contended that the State failed to properly preserve a black knife
             discovered in his vehicle . . . .  We conclude that Smith is not entitled to relief on this
11           claim.

12           In order to establish a due process violation resulting from the State's failure to
             preserve evidence, "a defendant must demonstrate either (1) that the state lost or
13           destroyed the evidence in bad faith, or (2) that the loss unduly prejudiced the
             defendant's case and the evidence possessed an exculpatory value that was apparent
14           before the evidence was destroyed."  In the instant case, Smith did not adequately
             establish the existence of a small black knife allegedly discovered in his car, or that
15           evidence of the knife would have altered the outcome of his trial. . . .   Consequently,
             Smith did not demonstrated that this counsel was ineffective for failing to move for a
16           dismissal on this basis, and the district court did not err in rejecting the claim.

17   Ex. 48, pp. 4-5 (#21-13, pp. 5-6) (citations omitted).  Randal McPhail, a crime scene analyst who

18   oversaw and took photographs of the examination of Petitioner's car, testified that he might have

19   seen a knife in the car, but he could not remember why he thought it was unimportant to the case.

20   Ultimately, he was not certain whether he might have been confusing a couple of different cases.

21   Ex. 52, pp. 42-46 (#33-10, p. 42, through #33-11, p. 3).  Robbie Dahn, the crime scene analyst who

22   actually examined the car, testified that she did not find a knife.  Ex. 53, pp. 28-29 (#33-14, pp. 45-

23   46).  Furthermore, Petitioner has not explained how this knife, if it existed, was exculpatory.  As

24   already noted, there is no doubt that Petitioner stabbed Tillman to death.  If this knife existed and it

25   was the knife used to stab Tillman, then it would prove nothing not already known.  If this knife

26

27       [2]Mr. Waddell did not have the clearest of minds when he witnessed the incident and when he
28   testified.  Ex. 51, pp. 51-52 (#33-7, pp. 25-26).

1   existed and Petitioner did not use it to stab Tillman, then it still would not exculpate Petitioner,

2   because it would only show that the homicide weapon had not yet been found.  The Nevada

3   Supreme Court reasonably applied Strickland.  28 U.S.C. § 2254(d)(1).

4          Sixth, Petitioner claims that counsel should have moved for an acquittal

5   notwithstanding the verdict.  The Nevada Supreme Court held:

6          To the extent that Smith is arguing that his counsel should have requested a judgment
       of acquittal, a review of the record reveals sufficient evidence to sustain Smith's
7          conviction for second-degree murder with the use of a deadly weapon, and he did not
       establish that his counsel was ineffective for failing to file such a motion.

8

9   Ex. 48, pp. 9-10 (#21-13, pp. 10-11) (citation omitted).  As already noted, Robert Waddell saw the

10  immediate aftermath of the attack upon Tillman, Robert Weston heard Tillman say that Petitioner

11  had stabbed him, Petitioner himself stated that he had stabbed Tillman, and Tillman had suffered

12  eight stab wounds, one penetrating the heart.  That evidence satisfies the elements of second-degree

13  murder.  See Nev. Rev. Stat. §§ 200.010, 200.030.  Petitioner argued self-defense, but the jury did

14  not accept his argument, and that was the jury's decision to make.  The Nevada Supreme Court's

15  decision was a reasonable application of Strickland.  28 U.S.C. § 2254(d)(1).

16         Seventh, Petitioner claims that counsel should have objected to the playing of the

17  audiotape of his interview with the police.  The Nevada Supreme Court held:

18         Smith contended that the copy was not clear and may have been edited from the
       original tape.  Smith further argued that his counsel should have requested that the
19         State admit the original copy of his taped statement.  We conclude that Smith did not
       provide sufficient facts to support his speculative claim that the copy was edited.
20         Smith further failed to establish that the district court's admission of the copy was
       erroneous, such that his counsel's performance was deficient for failing to object.
21         We therefore affirm the district court's denial of this claim.

22  Ex. 48, p. 4 (#21-13, p. 5) (citations omitted).  Even in this action Petitioner does not state what he

23  thinks was edited out of the tape recording.  The Nevada Supreme Court reasonably applied

24  Strickland.  28 U.S.C. § 2254(d)(1).

25         Eighth, Kenneth Gilmore sat as a spectator at the preliminary hearing but testified at

26  trial.  Petitioner claims that counsel should have objected to Gilmore's testimony because it violated

27  Nevada's witness-exclusion rule, Nev. Rev. Stat. § 50.155(1).  The Nevada Supreme Court held:

28

> We conclude that Smith did not establish that Gilmore's presence during Smith's preliminary hearing—during which Gilmore did not testify—violated the exclusionary rule at Smith's subsequent trial. Further, Smith did not establish that Gilmore's testimony was affected by the previous proceeding, such that his counsel's performance was unreasonable for failing to lodge an objection. As such, Smith did not demonstrate that his counsel was ineffective in this regard.

Ex. 48, p. 9 (#21-13, p. 10) (citation omitted). The witness-exclusion rule is a matter of state law, on which the Nevada Supreme Court has the final say. If Gilmore's presence at the preliminary hearing did not violate that rule, then the lack of objection to his testimony at trial would not have been ineffective assistance of counsel. Additionally, even in this action Petitioner does not allege how Gilmore's testimony was affected by his presence at the preliminary hearing. The Nevada Supreme Court reasonably applied Strickland. 28 U.S.C. § 2254(d)(1).

Ninth, Petitioner argues that trial counsel should have raised another issue in his motion for a new trial. Petitioner alleges that a juror had mentioned to trial counsel that the guilty verdict came solely upon the testimony of Detective Darlene Falvey that Petitioner had said that he had held the knife from the start of the incident. See Ex. 53, pp. 37-38 (#33-15, pp. 9-10). Petitioner maintains that he told Falvey that he had seized the knife from Tillman at the start of the incident. See Ex. B, p. 9 (#2-1, p. 21). In other words, Falvey's recollection did not include Petitioner's assertion that he seized the knife from Tillman. On the other hand, the jury heard the recording, and possessed the transcript, of his interview with Falvey, so they could notice the difference between Petitioner's statement and Falvey's recollection of Petitioner's statement. Regardless of how Petitioner obtained the knife, he was outside the car with the knife and Tillman was sitting inside the car unarmed. Whatever threat Tillman might have presented to Petitioner evaporated at that time. Petitioner then reached into the car and stabbed Tillman, because the investigators found Tillman's blood inside the car. Ex. 52, p. 16 (#33-10, p. 2). Petitioner's counsel did not perform deficiently by not raising this issue in the new trial motion.

Tenth, Petitioner claims that counsel should have called four people as witnesses. Petitioner wanted counsel to call police Sergeant Kevin Manning because witnesses told Manning that they saw people sitting in Petitioner's car before Petitioner killed Tillman. The Nevada Supreme Court ruled:

1
2
> Even assuming this testimony would not have been inadmissible hearsay, we conclude that Smith did not establish that the outcome of his trial would have been altered if this testimony had been presented.

3   Ex. 48, p. 6 n.14 (#21-13, p. 7) (citation omitted).  Manning would not have testified to anything

4   new, because Petitioner's statement to the police showed that he knew that people had been sitting

5   on and in his car.  Ex. B, pp. 2-6 (#2-1, pp. 14-18).  Petitioner wanted Keisha Morris to testify to

6   rebut the prosecution's hint that she might have hidden the knife.  The Court has already considered

7   and rejected this argument in the fourth claim of ineffective assistance of counsel.  Petitioner wanted

8   counsel to call Barbie George and Lawrence Ward.  The Nevada Supreme Court ruled:

9
10
11
12
> Smith contended that George and Ward would have testified that they informed Smith that people were sitting in his parked car.  This would have corroborated Smith's statement to police that he was upset because people were sitting in his car.  However, even assuming George and Ward provided such testimony at trial, we conclude that Smith did not establish that the results of his trial would have been different.  We therefore affirm the district court's denial of this claim.

13   Ex. 48, p. 6 (#21-13) (footnote omitted).  Petitioner's statement to the police established that he was

14   upset that people were sitting on and in his car.  Ex. B, pp. 2-6 (#2-1, pp. 14-18).  The Nevada

15   Supreme Court reasonably applied Strickland with respect to all these proposed witnesses.  28

16   U.S.C. § 2254(d)(1).

17       Eleventh, Petitioner claims that counsel should have objected to the testimony of

18   crime scene analyst Robbie Dahn because she testified that she had received training on blood-

19   pattern evidence after her investigation.  The Nevada Supreme Court held:

20
21
22
23
> A review of the record reveals that Dahn received training in blood pattern analysis prior to investigating the instant crime, although she testified that she received additional training subsequent to the investigation.  We therefore conclude that Smith did not establish that Dahn was not qualified to provide expert testimony concerning blood pattern analysis, such that his counsel was ineffective for failing to raise this issue on appeal.  Therefore the district court did not err in denying this claim.

24   Ex. 48, p. 11 (#21-13, p. 12).  Dahn's testimony confirms that she had received training in blood

25   patterns before Tillman's death.  Ex. 52, pp. 13-14 (#33-9, pp. 58-59).  The Nevada Supreme Court

26   reasonably applied Strickland.

27       Twelfth, Petitioner claims that appellate counsel was ineffective for failing to present

28   evidence that Petitioner was prejudiced by delays in his trial.  The Nevada Supreme Court held:

-10-

1
2
3
4
5
6
7

> On direct appeal, this court rejected Smith's claim that his right to a speedy trial was violated, noting in part that Smith did not demonstrate that he was prejudiced by the delay.  In the instant petition, Smith argued that his appellate counsel should have presented evidence that he was prejudiced for the following reasons:  his trial was delayed because "[t]he jury wanted to get their Christmas shopping done"; and his trial date was vacated one time because the district court judge claimed she would be out of the jurisdiction, although she was not.  We conclude that Smith did not demonstrate that the outcome [of] his direct appeal would have been different if his counsel had presented this information in support of his speedy trial claim, as these arguments would not have adequately demonstrated Smith was prejudiced.  Consequently, Smith failed to establish that his appellate counsel was ineffective in this regard.

8   Ex. 48 p. 13 (#21-13, p. 14).  This is a reasonable application of Strickland.  28 U.S.C. § 2254(d)(1).

9   Ground 6 has ten claims of error.  The Court has dismissed the third through eighth

10  claims.  Order (#30).

11  First, Petitioner claims that the trial court erred in not admitting evidence of

12  Tillman's propensity toward violence, based upon an incident in which Tillman resisted arrest.

13  Issues of evidence are not of federal constitutional importance unless they make the trial so unfair as

14  to violate due process.  Estelle v. McGuire, 502 U.S. 62, 67-68, 75 (1991).  On this issue, the

15  Nevada Supreme Court held:

16
17
18

> We have previously held that an accused can offer reputation or opinion evidence of the character of the victim in order to show that the victim was the likely aggressor, regardless of whether the accused had knowledge of the victim's character.  However, to support a claim of self-defense, evidence of specific acts of violence can only offered when the accused had knowledge of the specific acts.

19
20
21
22
23

> In this case, Smith chose not to testify and there was nothing in the police report to indicate that Smith was aware of the incident where Tillman resisted arrest.  Therefore, the court correctly excluded this specific act evidence.  Moreover, in Petty v. State, where we ruled that a police officer's opinion testimony was admissible, although based on a single incident where the victim assaulted the officer, here, the accused was not seeking to offer opinion testimony of the police officers, but sought to offer evidence of a specific act.  Also, in Petty, Tillman did not assault the officer, but merely tried to resist arrest.  Therefore, the district court correctly concluded that this was not the type of aggression that was admissible.

24  Ex. 37, pp. 5-6 (#20-12, pp. 20-21) (citing Petty v. State, 997 P.2d 800 (Nev. 2000))..  The Nevada

25  Supreme Court's ruling shows that the exclusion of the evidence was not fundamentally unfair.

26
27
28

-11-

1    Second, Petitioner claims that the trial court should have included in the self-defense

2  instruction that a mistaken belief in danger can justify the use of force.[3]  The error of a jury

3  instruction must so infect the entire trial with unfairness to amount to a violation of due process.

4  Henderson v. Kibbe, 431 U.S. 145, 154 (1977).  See also Middleton v. McNeil, 541 U.S. 433, 437

5  (2004).  The Nevada Supreme Court ruled:

6          First, the additional statement does not affect the prosecution's burden of proof.
         Second, it was not necessary in this case.  In Runion, we stated, "Whether these or
7          other similar instructions are appropriate in any given case depends upon the
         testimony and evidence of that case.  The district courts should tailor instructions to
8          the facts and circumstances of a case, rather than simply relying on 'stock'
         instructions.  In this case, there was no evidence presented regarding mistaken belief
9          of danger.  As we have previously stated, it is not error to refuse to offer a party's
         proffered jury instructions if those instructions are merely embellishments of the
10         proper instructions already provided to the jury.  This instruction, if given, would
         have been a mere embellishment.

11

12  Ex. 37, pp. 10-11 (#20-12, pp. 25-26) (quoting Runion v. State, 13 P.3d 52, 58-59 (Nev. 2000)).

13  Because there was no evidence that Petitioner mistakenly believed that he was in danger, the refusal

14  of that instruction was not fundamentally unfair.

15    As noted above, the Court has dismissed the third through eighth claims of Ground 6.

16    Ninth, Petitioner claims that the trial court abused its discretion in refusing

17  Petitioner's request for the tape recording of the police interview of defense witness Eric Orduna.

18  The Nevada Supreme Court held:

19         During the course of the trial, the prosecution received information that Eric Orduna,
         one of Smith's witnesses, was in possession of the knife used to kill Tillman.  Police
20         officers were sent to search his residence for the knife.  During the search, which
         occurred the night before Orduna was scheduled to testify, Orduna made a recorded
21         statement to the police officers.

22         The next day, prior to calling Orduna as a witness, the defense sought to obtain a
         copy of the tape.  The defense told the court that "it's obviously, the same thing he's
23         going to say on the stand, but I would like to know exactly what went on, what was
         said."
24
         The court determined that it was not relevant, since the prosecution did not have the
25         tape and would not bring out any information from the statement.  Further, the court
         ruled that it would not delay the trial in order to obtain the tape.
26

27  _____

28    [3]Petitioner raises the same claim in Ground 7.

-12-

1    Smith now argues that by not receiving the tape, "the defense was not given the
     opportunity to determine what statements, if any, defendant had made to witness Eric
2    Orduna." He further states that "[f]ailure to disclose impeaching evidence on request
     constitutes error if it deprives defendant of a fair trial." Smith fails, however, to
3    show any prejudice sustained by him.

4            . . .

5    In United States v. Bagley, the United States Supreme Court stated that "the
     prosecutor is not required to deliver his entire file to defense counsel, but only to
6    disclose evidence favorable to the accused that, if suppressed, would deprive the
     defendant of a fair trial." The prosecution must, however, provide both exculpatory
7    evidence and evidence that could be used to impeach the prosecution's witnesses.

8    In this case, the witness in question was a defense witness. NRS 174.235(1) only
     requires the prosecutor to provide recorded statements of prosecution witnesses. In
9    addition, the defense learned about Orduna's statement to the police from Orduna
     himself. Certainly, he could have informed them of what he said in that statement.
10   Moreover, neither party used information from the statement or even mentioned the
     statement during the trial. Therefore, there is no evidence that Smith was prejudiced
11   in any way not having a copy of Orduna's statement to the police.

12   Ex. 37, pp. 7-9 (#20-12, pp. 22-24) (quoting United States v. Bagley, 473 U.S. 667, 675 (1985)).

13   Orduna testified about a time in which he saw Tillman act angrily toward Petitioner, and Petitioner

14   act calmly to tell Tillman to go away. Ex. 53, pp. 81-84 (#33-15, pp. 53-56). Orduna also testified

15   that when he needed to cut lengths of hose for his carburetor, he borrowed from Petitioner a folding

16   knife with a black handle, and he gave that knife back to Petitioner. Ex. 53, p. 87 (#33-15, p. 59). If

17   Orduna had said something to the police that either exculpated Petitioner or impeached a

18   prosecution witness, then he could have testified to that effect. He did not. Consequently, the

19   Nevada Supreme Court's decision was a reasonable application of Bagley. 28 U.S.C. § 2254(d)(1).

20           Tenth, the prosecution provided to the jurors copies of the transcript of Petitioner's

21   police statement. See Ex. B (#2-1, p. 13). The jurors took notes on their copies, and they were

22   allowed to keep the copies through the trial. Petitioner claims that this was erroneous. The Nevada

23   Supreme Court ruled:

24   NRS 175.401 provides that the jury must be given particular admonishments at each
     adjournment of the court. These admonishments were given in this case, as required.
25   Among these admonishments is a requirement that they not "form or express any
     opinion on any subject connected with the trial until the cause is finally submitted to
26   them." We have previously stated that there is a presumption that the jury follows
     the instructions that are given to them.

27

28

-13-

1
2
> Jurors are also instructed that they are allowed to take notes during the trial. The jurors are allowed to take these notes with them when they retire for deliberations, along with any materials received in evidence in the case.

3
4
> In this case, Smith has not provided any evidence to rebut the presumption that the jurors obeyed the admonishment to not prematurely form an opinion regarding the case.

5   Ex. 37, p. 7 (#20-12, p. 22) (citations omitted). Nothing in the record of the case indicates that

6   keeping copies of the transcript made the trial fundamentally unfair. See McGuire, 502 U.S. at 67-

7   68.

8           Ground 7 is the same as the second claim of Ground 6, and the Court rejects it for the

9   same reason.

10          In Ground 8, Petitioner claims that the testimony of Merilyn Graham and Chinnette

11  Jenkins was false. Respondents argue that this ground is procedurally defaulted. Petitioner raised

12  the same claim in Ground 13(3) of his amended state habeas corpus petition.[4] Ex. 41, p. 62 (#21-5,

13  p. 5). The Nevada Supreme Court held that state law barred this claim because Petitioner could

14  have raised it on direct appeal and did not show good cause for that failure. Ex. 48, pp. 13-14 (#21-

15  13, pp. 14-15) (citing Nev. Rev. Stat. § 34.810).

16          A federal court will not review a claim for habeas corpus relief if the decision of the

17  state court regarding that claim rested on a state-law ground that is independent of the federal

18  question and adequate to support the judgment. Coleman v. Thompson, 501 U.S. 722, 730-31

19  (1991).

20
21
22
23
> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

24
25
26
_____

27  [4]Respondents refer to Ground 11 of the same petition. Ground 11 provides the factual basis,

28  but that ground is a claim of ineffective assistance of counsel. Ex. 41, pp. 56-58 (#21-4, pp. 31-33). Ground 13(3) is the underlying claim about false testimony.

1    Id. at 750; see also Murray v. Carrier, 477 U.S. 478, 485 (1986).  The ground for dismissal upon

2    which the Nevada Supreme Court relied in this case is an adequate and independent state rule.

3    Vang v. Nevada, 329 F.3d 1069, 1074 (9th Cir. 2003) (Nev. Rev. Stat. § 34.810).

4              Petitioner did not address cause and prejudice in his Opposition (#40).

5    Consequently, the Court dismisses Ground 8.  See Casey v. Moore, 386 F.3d 896, 921 n. 27 (9th

6    Cir. 2004), cert. denied, 545 U.S. 1146 (2005).

7              Petitioner's Motion for Appointment of Counsel (#38) is moot because the Court is

8    denying the Amended Petition (#24).

9              IT IS THEREFORE ORDERED that the Motion for Appointment of Counsel (#38)

10   is **DENIED** as moot.

11             IT IS FURTHER ORDERED that the Amended Petition for a Writ of Habeas Corpus

12   (#24) is **DENIED**.  The Clerk of the Court shall enter judgment accordingly.

13             DATED: September 19, 2008.

14

15                                                    _____
                                                     ROGER L. HUNT
16                                                   Chief United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

                                              -15-